UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANGELA WISKUR | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22cv1256 (MSN/WEF) |
| | ) |
| EQUIFAX INFORMATION | ) |
| SERVICES, LLC | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff Angela Wiskur's motion seeking attorneys' fees and costs. (Dkt. 69). Plaintiff's motion is filed pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681o(a)(2), and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 54(d) based upon Plaintiff's acceptance of Defendant's Fed. R. Civ. P. 68(a) Offer of Judgment. Pursuant to 28 U.S.C. § 636(b)(1)(C) and the Court's Order of August 18, 2023 (Dkt. 67), the undersigned magistrate judge is filing with the Court these proposed findings of fact and recommendations, a copy of which will be provided to all interested parties. For the reasons set forth below, the undersigned recommends Plaintiff's motion for attorneys' fees and costs be **GRANTED** but for an amount less than Plaintiff requested.

**Factual and Procedural Background**

*Plaintiff's Complaint*

On November 4, 2022, Plaintiff filed her Complaint alleging that Defendant Equifax Information Services, LLC ("Equifax") failed to comply with its statutory obligation under the Fair Credit Reporting Act to reasonably investigate Plaintiff's claim of identity theft and related fraud. (Dkt. 1, "Compl."). Specifically, Plaintiff alleged her personal identification information

1

was compromised and an unknown individual made several credit inquiries posing as Plaintiff and ultimately purchased a cell phone and cell phone service from Verizon in Plaintiff's name. (Compl. ¶ 5). Plaintiff further alleged that the day after the unknown individual purchased the cell phone and cell phone service from Verizon, Plaintiff filed a police report noting the fraudulent transaction and notified Equifax of the theft of her personal information. (*Id*. ¶ 6). Plaintiff also alleged that despite her prompt reporting of the fraudulent conduct, Equifax never properly investigated her claim but instead outsourced the responsibility to an overseas company named Intelenet.[1] (*Id*. at 2, 6). The failure to properly investigate Plaintiff's claim allegedly caused negative entries on her personal credit report, including an entry noting a $751 past due amount owed to Verizon. (*Id*. at 4–12, 14). Plaintiff further claimed she was injured by Equifax's conduct because she suffered emotional distress and the negative credit entries prevented her from being a co-signor along with her husband on a mortgage for their first home. (*Id*. at 14). As a result, Plaintiff sought unspecified compensatory damages, punitive damages, and statutory damages from Equifax. (*Id*. at 21, Prayer for Relief).

*The Parties' Discovery Disputes*

On December 19, 2022, Equifax filed its Answer (Dkt. 4), and thereafter, the Court entered a Scheduling Order (Dkt. 6). On January 18, 2023, the undersigned entered a Discovery Order pursuant to Fed. R. Civ. P. 16(b). (Dkt. 9). The parties then engaged in a thorough discovery process and a robust motions practice. The parties litigated two significant discovery disputes.

First, Equifax sought a protective order to limit the scope of Plaintiff's questioning of its Fed. R. Civ. P. 30(b)(6) witness. (Dkt. 18). The two principal issues raised in the motion were

---

[1] The company was later identified in various motions as "Teleperformance." The proper name of the overseas company is not relevant to the undersigned's recommendation to the Court regarding the issue of reasonable attorneys' fees and costs.

(1) the degree to which an Equifax witness could testify to the innerworkings of the overseas company hired by Equifax to investigate claims of inaccurate credit information, including the claim made by Plaintiff, and (2) the underlying facts that support Equifax's statement as to the company's net worth. (Dkts. 18). The issue was thoroughly briefed by the parties (Dkts. 18, 21, 22), the undersigned heard oral argument on March 15, 2023 (Dkt. 23), and thereafter partially granted Equifax's motion. (Dkt. 24). In doing so, the undersigned set clear boundaries as to the scope of what Equifax's 30(b)(6) witness could testify to regarding the operations of a subcontractor as well as Equifax's responsibility to support its net worth claim. (Dkts. 24, 25).

Next, after Plaintiff's deposition of Equifax's 30(b)(6) witness, Plaintiff filed a motion seeking sanctions on the grounds that Equifax's 30(b)(6) witness was unprepared to testify to the subjects previously approved by the undersigned and as a remedy sought to compel additional discovery from Equifax. (Dkt. 26). In support of its motion for sanctions, Plaintiff asserted several allegations of discovery misconduct against Equifax and its counsel.[2] (*Id*.) The issues were briefed (Dkts. 27, 29, 30), the undersigned heard oral argument on April 28, 2023 (Dkt. 31), and thereafter denied Plaintiff's motion for sanctions. (Dkt. 32). In general, Plaintiff's motion for sanctions reflected a misunderstanding of the undersigned's March 15, 2023 ruling regarding the proper scope of Equifax's 30(b)(6) witness' testimony. In denying Plaintiff's motion for sanctions, the undersigned found no support for Plaintiff's argument that Equifax had engaged in misconduct during the discovery process or had failed to prepare its 30(b)(6) witness in a manner consistent with the undersigned's March 15, 2023 Order. Nevertheless, the undersigned ultimately determined that even though no sanctionable conduct occurred, in order to ensure compliance with

---

[2]   Plaintiff reasserts her allegations of discovery misconduct by Equifax in this Motion, which are further addressed below.

3

the undersigned's March 15, 2023 Order and to avoid any prejudice to Plaintiff, it was necessary for Equifax to provide additional information regarding its knowledge of the operations of its overseas subcontractor. (*Id.*)

*Motions for Summary Judgment*

On May 9, 2023, Equifax filed a motion for summary judgment in which it argued it was entitled to a judgment as a matter of law because the record did not establish facts sufficient to (1) demonstrate that Equifax failed to employ reasonable procedures in reporting Plaintiff's credit information; (2) demonstrate that Equifax failed to reasonably investigate information disputed by Plaintiff; (3) establish damages related to Plaintiff's efforts to obtain a mortgage; and (4) establish that any FCRA violations were willful. (Dkts. 34, 35). The issues were thoroughly briefed (Dkts. 35, 47, 48), the District Judge heard oral argument on June 9, 2023, and thereafter granted summary judgment as to Plaintiff's willfulness claims but denied summary judgment as to the remainder of Equifax's claims. (Dkt. 50). In addition, the Court rejected Plaintiff's request to strike the declaration of Equifax's 30(b)(6) witness. (*Id.*)

On July 7, 2023, Plaintiff filed a motion for reconsideration of the Court's Order granting summary judgment as to her claims of willfulness. (Dkt. 55). Plaintiff argued the Court should reconsider its previous ruling because Plaintiff had only 30 pages to respond to Equifax's motion for summary judgment, and as a result, Plaintiff was unable to provide the Court with all relevant information. (Dkt. 56 at 1–2). Plaintiff argued Equifax filed its motion for summary judgment "without any notice or warning" and as a result "Plaintiff did not have the time to draft her own Motion for Summary [J]udgment with the additional 30 pages of space." (*Id.*) During oral argument on August 4, 2023, the Court expressed some surprise at this position given that "at the final pretrial conference . . . [the Court] asked the parties whether or not we should combine and

4

have a single motion for summary judgment hearing with regard to both matters. [The Court] was told no." (Dkt. 65 at 2–3, Hearing Transcript). Moreover, Plaintiff's argument failed to recognize the clear factual and legal differences between her opposition to Equifax's motion and the arguments she advanced in her motion for partial summary judgment. Plaintiff also ignored the fact that Equifax was subject to the same page limitations.[3] Plaintiff never requested leave of Court to file an overlength brief in which she could have attempted to explain in a timely fashion why such a discrete issue as willfulness required extensive briefing. Nor did counsel convey to the Court at the oral argument on June 9, 2023 that the record was incomplete or that counsel was not prepared to proceed. Finally, Plaintiff's counsel was unable to identify any relevant information related to the issue of willfulness that was not brought to the Court's attention as part of the original motion and never identified any of the well-established factors that would support the reconsideration of a court order.[4] The Court found the issue of willfulness had been fully litigated and properly ruled upon, and denied Plaintiff's motion for reconsideration. (Dkt. 64; Dkt. 65 at 2–3, 6–7).

Also on July 7, 2023, Plaintiff filed her motion for partial summary judgment. (Dkt. 52).[5] In her motion, Plaintiff reasserted her theory of the case and claimed the undisputed facts were sufficient to establish as a matter of law that Equifax failed to conduct a reasonable and

---

[3]   Local Civil Rule 7(F)(3) limits opening and responsive briefs to 30 pages.

[4]   A district court may grant a motion for reconsideration under Rule 54(b): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice. *See LaFleur v. Dollar Tree Stores, Inc.*, C.A. No. 2:12-cv-00363, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014) (citing *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993)).

[5]   Plaintiff sought summary judgment on the issue of liability only and requested the issue of damages be submitted to a jury. (Dkt. 52).

independent investigation into the complaint lodged by Plaintiff. (Dkt. 53). On July 21, 2023, Equifax filed its response in which it summarized its conduct and argued that whether its actions and the actions of its subcontractor constituted a reasonable investigation was a matter for the jury to decide. (Dkt. 59). On July 28, 2023, Plaintiff filed her reply (Dkt. 61), and the Court heard oral argument on August 4, 2023. (Dkt. 63). After careful consideration, the Court denied Plaintiff's motion for partial summary judgment in its entirety. (Dkt. 64).

*The Settlement Agreement*

On June 20, 2023, the parties participated in an in-person settlement conference. On August 16, 2023, Plaintiff accepted Equifax's offer of judgment pursuant to Fed. R. Civ. P. 68(a). (Dkt. 66). On August 18, 2023, the Court entered judgment on behalf of Plaintiff in the agreed upon amount of $195,000 plus reasonable attorneys' fees and costs. (Dkt. 67). The Court also ordered, consistent with the agreement of the parties, that the award of attorneys' fees and costs be determined by the undersigned magistrate judge and submitted to the Court in a Report and Recommendation. (Dkts. 67, 68).

On September 1, 2023, Plaintiff filed her motion for attorney's fees and costs supported by a memorandum of law. (Dkts. 69, 70). On September 15, 2023, Equifax filed its response (Dkt. 73), and on September 22, 2023, Plaintiff filed her reply (Dkt. 74). The undersigned held a hearing on September 29, 2023 and granted the parties' request to file additional briefing to provide a more detailed analysis of the contested issues. (Dkt. 76). On October 9, 2023, Equifax filed its supplemental response to Plaintiff's Motion (Dkt. 77), and on October 16, 2023, Plaintiff filed her supplemental reply (Dkt. 78). The undersigned then took this matter under advisement to prepare this Report and Recommendation.

## Attorneys' Fees[6]

The Fair Credit Reporting Act ("FCRA") provides for the mandatory award of attorney's fees and costs to a plaintiff's counsel who prevails in pursuing an action under the FCRA. *See* 15 U.S.C. § 1681o(a)(2) ("[I]n the case of any successful action to enforce any liability under [the FCRA], the costs of the action together with reasonable attorney's fees as determined by the court [shall be awarded to plaintiff's counsel]."). Plaintiff bears the burden of establishing that the attorney's fees she seeks are reasonable. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate.").

*Plaintiff's Request for Attorneys' Fees*

Plaintiff seeks an award of attorneys' fees for Hugo Blankingship, III as lead counsel, who is a seasoned attorney with significant experience litigating FCRA cases on behalf of plaintiffs, and his law partner, Thomas Christiano. On September 1, 2023, Plaintiff filed her motion for attorney's fees supported by a memorandum of law. (Dkts. 69, 70). Plaintiff attached four exhibits concerning attorneys' fees to the Motion including a declaration from Mr. Blankingship (Dkt. 70-1), a 15-page statement setting forth the legal services provided by Mr. Blankingship that included the date of service and the estimated amount of time expended on each task (Dkt. 70-2), a declaration from Mr. Christiano (Dkt. 70-4), and a 6-page statement setting forth the legal services provided by Mr. Christiano that included the date of service and the estimated amount time expended on each task (Dkt. 70-3).[7] Specifically, Plaintiff seeks payment for 509.5 hours of Mr. Blankingship's time at a rate of $700 per hour which equals $356,650 and payment for 225.1 hours

---

[6]   Plaintiff's request for costs is examined separately.

[7]   As discussed in greater detail below, the timesheets submitted by Mr. Blankingship and Mr. Christiano reflect an estimate of the hours expended on each project rather than a contemporaneous accounting of counsels' time. (*See* Dkt. 70-1 at ¶ 22.).

7

of Mr. Christiano's time at a rate of $600 per hour which equals $135,060.  (Dkt. 70 at 8; Dkts. 70-1–70-4).  Taken together, this results in an initial request of $491,710 in attorneys' fees.  (*Id*.)  However, Plaintiff seeks an additional $35,700 for time expended preparing her reply brief in support of this Motion (Dkt. 74-1) and an additional $21,410 for time expended preparing her supplemental reply brief (Dkt. 78-2).  This results in a total request of $548,820 in attorneys' fees.

*Step 1: The Lodestar Figure*

Where an award of fees is appropriate, the Fourth Circuit has set forth the standard for determining whether the fee awards are reasonable in *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235 (4th Cir. 2009).  In *Robinson*, the Fourth Circuit directed that "[i]n calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id*. at 243 (citing *Grissom v. The Mills Corp*. 549 F.3d 313, 320 (4th Cir. 2008)).  The Fourth Circuit next instructed that "[i]n deciding what constitutes a 'reasonable' number of hours and rate," the court should be guided by the following twelve factors:

> (1) the time and labor expended;  (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id*. at 243–44 (citing *Barber v. Kimbrells Inc*., 557 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting twelve factors test set forth in *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989))).  The undersigned having reviewed the submissions of counsel as well as all attached exhibits, including Plaintiff's

8

estimated billing statements, and all pleadings filed in this case, make the following findings with regard to the twelve factors set forth in *Robinson*:

(1) *The time and labor expended.* The preparation and litigation of a FCRA case, regardless of the factual or legal complexities, requires a considerable investment of counsels' time and labor. Taken together, the estimated billing records and pleadings reflect a thorough pre-filing investigation, a Complaint that properly alleged the claim that was ultimately settled in a manner favorable to the Plaintiff, a fulsome discovery process, a labor-intensive motions practice that included cross motions for summary judgment, a settlement conference, the acceptance of an offer of judgment, and the post-settlement litigation of attorneys' fees and costs. The record also reflects a period of time devoted to the development of counsels' work product, communications with opposing counsel, and meetings with Plaintiff. Under the facts of this case, counsels' expenditure of time and labor is the factor the undersigned attaches the greatest weight in evaluating the reasonableness of Plaintiff's request for attorneys' fees.

*Billing Records in Support of Plaintiff's Time and Labor Expended*

The undersigned carefully considered the billing records submitted by Plaintiff in support of counsels' claim of time and labor expended. However, the undersigned attaches only moderate weight to the billing records due to the inherently subjective and unreliable manner in which the records were created. With respect to the firm's billing procedures, Mr. Blankingship stated the following in his declaration:

> Because the firm does not issue bills to clients and most fees for the past decade have been determined by percentage rather than time expended, counsel for the Plaintiff keeps track of their time in a variety of different ways. When requested to provide an estimate of fees or submit a fee petition, counsel collects all the available data, review[s] the work performed, examines email correspondence[,] and provides the times and dates of work in an excel spread sheet. After that time is collected and tabulated, a secondary review is provided to evaluate the time spent and reduce time as appropriate. (Dkt. 70-1 ¶ 22).

9

In other words, the billing records are an after-the-fact attempt to reconstruct the time expended on a particular task or project. Failure of counsel to record their time in a reasonably contemporaneous manner significantly reduces the reliability of the records. Given the first entry on the billing records is in October 2022 and Plaintiff accepted Equifax's offer of judgment in August 2023, and counsel does not begin their billing review process until they need to "submit a fee petition," it is reasonable to infer that an extended period of time elapsed between much of the legal work performed and preparation of the billing records. At best, the billing records constitute a good faith effort to estimate counsels' time and labor. Counsels' claim that the billing records are accurate to a tenth of an hour is simply inconsistent with the methodology used to construct the records. Moreover, the Court's review of the billing records was frustrated because it was often difficult to discern which entry pertained to which motion.[8] Mr. Blankingship's declaration explains why the firm fails to contemporaneously track its time but it does not address the lack of reliability of this type of record keeping when it comes to determining time and labor expended. The end result is billing records that the undersigned cannot reasonably be confident are sufficiently accurate and, therefore, will be considered accordingly.

*Plaintiff's Claim That Equifax's Improper Conduct Increased Plaintiff's Hours and Labor*

Underlying much of Plaintiff's argument in support of the reasonableness of the hours and labor counsel expended on this case is the claim that Equifax engaged in a premeditated effort to obstruct the discovery process and improperly prolong the litigation. (Dkt. 70 at 1–7). Plaintiff's brief and Mr. Blankingship's declaration are replete with general accusations of misconduct but utterly lack factual support. To the extent the Court finds it necessary to consider this issue in the

---

[8] As a result, the undersigned spent significant time comparing the dates counsel claimed work was done to the docket to identify what work was performed in furtherance of which motion.

context of an award of attorneys' fees and costs, the undersigned recommends the Court find that Plaintiff's claims of misconduct by Equifax are wholly unsupported by the record.

First, Plaintiff claims Equifax was not forthcoming in discovery and invites the undersigned to "examine the interrogatory answers and/or Equifax's responses to RFA's" which, according to Plaintiff, will make "clear how many objections were asserted and how improper and evasive the responses were." (*Id*. at 3). The undersigned previously considered and ruled upon each discovery dispute between the parties. (*See* Dkts. 18, 20–24, 26–30, 32). Plaintiff's current claim that Equifax abused the discovery process is similar to the previous allegation Plaintiff asserted in her motion for sanctions. (Dkt. 26). At the time, the undersigned considered the written submissions of the parties, heard oral argument of counsel, and ruled that Equifax did not engage in any improper or otherwise sanctionable conduct. (Dkts. 31, 32). Given that Plaintiff's counsel has re-raised this issue in support of the pending request for attorneys' fees and costs, the undersigned re-reviewed the full record, including the current and prior submissions of counsel, and again finds insufficient factual support for the serious allegations of misconduct levied by Plaintiff. The undersigned's review of Equifax's "interrogatory answers and/or Equifax's responses to RFA's" reveals that procedurally Equifax complied with the Federal Rules and that substantively Equifax's responses were sufficiently tailored to the specific discovery request.

Second, Plaintiff claims that Equifax needlessly prolonged settlement negotiations which, in turn, increased the hours expended on this case by Mr. Blankingship and Mr. Christiano. (Dkt. 70 at 4–7). Again, the record does not support Plaintiff's allegation. The record reveals there were genuine legal and factual issues in dispute with respect to liability and both parties had a difficult task quantifying damages associated with a $751 past due amount on a Verizon account and Plaintiff's decision to forego a joint mortgage. The parties properly litigated cross summary

judgment motions—both parties enjoying some measure of success—and once the legal and factual landscape became clear, the parties reached a reasonable settlement agreement. Nothing about this process or the conduct of either party that reflects bad faith. As a result, the undersigned gives no weight to this argument in determining what hours and labor were reasonably expended by counsel in this case.

(2) *The novelty and difficulty of the questions raised*. This case did not present particularly novel or difficult issues. This case was centered on the well-defined issue of what steps Equifax and Intelenet took to investigate Plaintiff's claim of identity theft and whether those actions constituted a reasonable investigation into Plaintiff's challenge to her credit report. Plaintiff contends this case has wider implications regarding the scope of Equifax's statutory obligation to investigate complaints. However, having reviewed the record in its entirety, the undersigned disagrees. To the contrary, the principal precedential value this case has pertains to Equifax's successful partial summary judgment in which the Court struck Plaintiff's claims of willfulness. The undersigned finds this case to be a clear-cut FCRA matter that presented important but straightforward issues.

(3) *The skill required to properly perform the legal services rendered*. Even though this case was not novel or difficult, the FCRA is a complex statutory scheme that requires a high degree of skill to navigate. Moreover, counsel demonstrated a command of relevant substantive law and procedural law, as well as an ability to effectively advance his client's interests, and these distinct skill sets reflect a high degree of professional competency.

(4) *The attorney's opportunity cost in pressing the instant litigation*. There is nothing in the record regarding the attorneys' opportunity costs in pressing this litigation that the undersigned finds relevant or persuasive to an award of attorneys' fees.

(5) *The customary fee for like work*.  There is nothing in the record regarding the customary fee for like work that the undersigned finds relevant or persuasive to an award of attorneys' fees.

(6) *The attorney's expectations at the outset of the litigation*.  There is nothing in the record regarding the attorneys' expectations at the outset of the litigation that the undersigned finds relevant or persuasive to an award of attorneys' fees.

(7) *The time limitations imposed by the client or circumstances*.  There is nothing in the record regarding the time limitations imposed by the client or circumstances that the undersigned finds relevant or persuasive to an award of attorneys' fees.

(8) *The amount in controversy and the results obtained*.  Clearly, Plaintiff was highly successful.  In her Complaint, Plaintiff did not seek a specific award of damages.  Nevertheless, Plaintiff obtained a financial settlement in the amount of $195,000.  The undersigned finds this settlement to be quite favorable to Plaintiff given the nature of the evidence, particularly with respect to damages.  Plaintiff's counsel overcame significant legal and factual challenges to ultimately negotiate an excellent settlement on behalf of Plaintiff, and therefore, is credited with obtaining an outstanding result.

(9) *The experience, reputation and ability of the attorney*.  Mr. Blankingship is clearly a seasoned attorney with significant experience litigating FCRA cases on behalf of plaintiffs.  He appears to have a fine professional reputation, and through the course of the litigation demonstrated a superior ability as an attorney.  Similarly, Mr. Christiano, as a junior partner to Mr. Blankingship, also performed well on behalf of Plaintiff.

(10) *The undesirability of the case within the legal community in which the suit arose*.  Given the straightforward nature of this case and the fee shifting provision of the FCRA in favor of a prevailing plaintiff, the undersigned finds no basis to conclude this case was undesirable within

the legal community.  Counsel points to no fact unique to this case that would indicate this specific action was an undesirable FCRA case.

(11) *The nature and length of the professional relationship between attorney and client*.  There is nothing in the record regarding the nature and length of the professional relationship between attorney and client that the undersigned finds relevant or persuasive to an award of attorneys' fees.

(12) *Attorneys' fee awards in similar cases*.  The parties each proffer evidence of attorneys' fee awards in other FCRA cases.  Each of those cases, however, are materially distinct from this case, and there is an insufficient number of examples from which the undersigned can draw any reliable statistical comparison.  Nevertheless, the undersigned notes the fee awards in the cases cited fall within the same general range as the fee award in this case.

*The Number of Reasonable Hours Expended*

In total, Plaintiff seeks payment for 568.2 hours of Mr. Blankingship's time and 251.8 hours of Mr. Christiano's time.  (Dkts. 70, 74-1, 78-2).  Equifax opposes Plaintiff's request on the grounds that the hours requested are excessive and therefore unreasonable and further argues that counsel over-litigated an otherwise uncomplicated case.  (Dkt. 73).  Equifax claims that given the modest complexity of the case, an experienced counsel such as Mr. Blankingship should not have needed over 800 billable hours to prosecute this case.  (*Id*.)  Equifax argues that the discovery process and motions practice did not warrant such an investment of time and labor and that much of the work had previously been done when Plaintiff sued two other credit reporting agencies arising out of the same set of facts.  (Dkt. 73; Dkt. 77-1).  Equifax identified with particularity the entries in counsels' billing records that they challenged and the basis for each objection.  (Dkt. 77-1).  The undersigned has considered each objection as well as Plaintiff's response.  (Dkt. 78-1).

14

Accordingly, considering the twelve factors identified in *Robinson* and having reviewed the full record, the undersigned finds that the number of hours reasonably expended in furtherance of this case is less than that requested by counsel. As part of the analysis, the undersigned finds that the requested billable hours related to Plaintiff's opposition to Equifax's motion for a protective order (Dkt. 21), Plaintiff's opposition to Equifax's motion for summary judgment (Dkt. 47), Plaintiff's motion for partial summary judgment (Dkt. 52) and her reply to Equifax's opposition to Plaintiff's motion for partial summary judgment (Dkt. 61), and Plaintiff's motion for attorney's fees and costs (Dkt. 69) and her reply to Equifax's opposition to Plaintiff's motion for attorney's fees and costs (Dkt. 74) are excessive. In so holding, the undersigned finds that the number of requested hours significantly exceeds what a veteran attorney experienced in FCRA litigation should reasonably expend in advancing a case of this type, particularly given the overlap in facts and issues with previous cases. In addition, the undersigned finds that Plaintiff's motion for sanctions (Dkt. 26) and her reply to Equifax's opposition to Plaintiff's motion for sanctions (Dkt. 30), and Plaintiff's motion for reconsideration (Dkt. 55) and her reply to Equifax's opposition to Plaintiff's motion for reconsideration (Dkt. 62) were unnecessary altogether. In support of these findings, the undersigned compared the billable hours requested to the complexity of the issues addressed in the pleadings, the merits of Plaintiff's arguments, the degree of legal research necessary, and the quality of Plaintiff's legal writing and legal reasoning. Therefore, after careful consideration, the undersigned finds that 295 hours of Mr. Blankingship's time and 95 hours of Mr. Christiano's time are the number of hours reasonably expended in furtherance of this case.

*A Reasonable Rate for Mr. Blankingship and Mr. Christiano*

In *Plyler*, the Fourth Circuit noted that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the

15

relevant community for the type of work for which he seeks an award." *Plyler,* 902 F.2d at 277 (internal quotation marks and citations omitted). Here, however, Equifax has stipulated to the reasonableness of Mr. Blankingship's rate of $700 per hour and Mr. Christiano's rate of $600 per hour. (Dkt. 73 at n.7).

*The Lodestar Figure*

As a result, with respect to Mr. Blankingship, the undersigned multiplied 295 hours by a rate of $700 per hour which equals $206,500. With respect to Mr. Christiano, the undersigned multiplied 95 hours by a rate of $600 per hour which equals $57,000. Adding these two figures together, the undersigned finds the lodestar figure to be $263,500.

*Step 2: Consideration of Unsuccessful Claims*

Once the court determines the lodestar figure, the court should subtract fees for hours spent on unsuccessful claims. *Robinson*, 560 F.3d at 244 (internal quotation marks and citations omitted). As previously discussed, Plaintiff alleged Equifax willfully violated its statutory obligation under the FCRA, and the Court found the claim to be legally and factually insufficient. Therefore, the undersigned finds a modest reduction of the lodestar figure in the amount of $13,500 is warranted.

*Step 3: The Degree of Success by Plaintiff*

Finally, the Court shall "award[ ] some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F.3d at 244 (internal quotation marks and citations omitted). As previously discussed, Plaintiff was highly successful. Plaintiff's counsel negotiated a favorable settlement even though Plaintiff faced several legal and factual challenges. As a result, the undersigned finds no additional reduction of attorneys' fees to be appropriate.

*Conclusion*

For the reasons set forth herein, pursuant to 5 U.S.C. § 1681o(a)(2) and Fed. R. Civ. P. 54(d), the undersigned recommends the Court award Plaintiff's counsel a total of $250,000 in attorneys' fees.

### Costs of the Litigation

The FCRA also allows prevailing plaintiffs to recover "costs of the action." *See* 15 U.S.C. § 1681o(a)(2). Plaintiff's motion for attorneys' fees and costs seek $16,677.40 in costs. (Dkt. 70). Equifax does not object to Plaintiff's request. (Dkt. 73). The undersigned has reviewed Plaintiff's request as well as the supporting documentation and recommends the Court order Plaintiff to be paid her costs in the full amount of $16,677.40.

### Recommendation

For the reasons outlined above, the undersigned United States Magistrate Judge recommends that Plaintiff's motion for attorneys' fees and costs be **GRANTED** but for an amount of attorneys' fees less than Plaintiff requested. Specifically, the undersigned recommends that:

- the Court award Plaintiff's counsel a total of $250,000 in attorneys' fees;
- the Court award Plaintiff costs in the amount of $16,677.40; and
- Equifax be ordered to pay all attorneys' fees and costs within 30 days of the Court entering a final Order.

### Notice

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to file timely objections waives appellate review of any judgment or decision based on this Report and Recommendation.

*William E. Fitzpatrick*
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

April 2, 2024
Alexandria, Virginia

18